## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Asheville Division

FILED
ASHEVILLE, NC

AUG 04 2023

U.S. DISTRICT COURT
W. DISTRICT OF N.C.

No. 1:23-CV-207-MR-WCM

TODD W. SHORT
2 Carmel Ridge Circle, Apt. 105
Asheville, N.C. 28806-0065,

                Plaintiff,

    v.

MICHAEL BOYD, FBI SPECIAL AGENT, *in his individual capacity*
JOHN DOE FBI SPECIAL AGENT 1-6, *in their individual capacities*
c/o Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

                Defendants.

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT FOR DAMAGES
(Unreasonable Search and Seizure)

### INTRODUCTION

1.    This is a civil rights action raising constitutional claims under the Fourth Amendment against federal law enforcement Agents pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), for their unlawful actions during their involvement in the eight-year ongoing criminal investigation Plaintiff Todd W. Short that began on July 16, 2016.

2.      Where for the last six-and-a-half years of the investigation in which Defendant FBI Special Agent Michael Boyd and Defendants FBI Special Agent John Doe (1-6) were involved. Where at all relevant times to the complaint acting within the scope of their employment and under the color of law of the United States. When they utilized, and continue to utilize, means and methods, and manners that include, intrusive electronic surveillances, physical surveillances, wiretaps, and obtrusive searches and seizures. In which they often bypassed required judicial authorization in the use of those means, methods, and manners. Or they operated outside the permissible scope and timeframe of warrants, orders, and extensions thereof.

3.      This action is not to preemptively challenge any criminal charges the Plaintiff anticipates he'll be charged with shortly; those challenges can be made at that time. Instead, this action focuses solely on the deprivation, and continued deprivation of Plaintiff's rights under the Fourth Amendment to the United States Constitution which constrains law enforcement's actions by protecting citizens, (even those under an investigation) from unreasonable searches and seizures, and Defendant Agent Boyd and Defendant Agent (1-6)'s actions were, and still are clearly unreasonable.

4.      But, that Defendant Agent Boyd and Defendant Agent (1-6)'s means and methods, and manners were also recklessly utilized and continue to utilize on the Plaintiff's family for the sole reason to "get the Plaintiff at all costs." In which knowingly and with forethought infringed on Plaintiff's family's rights under the Fourth Amendment to the United States Constitution and deprived them of a reasonable expectation of privacy.

2

5.      This complaint is not to preemptively challenge any criminal charges Plaintiff anticipates he'll be charged with shortly; those challenges can be made at that time. Instead, this action focuses solely on the deprivation of Plaintiff's federally protected rights. Plaintiff now seeks damages for these violations of his rights and to enjoin for this type of conduct.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1331 because Plaintiff's claims arise under the Fourth Amendment to the United States Constitution.

7.      Venue in this Court is proper pursuant to 28 U.S.C § 1391(b)(2) because the events giving rise to this claim all transpired in the Western District of North Carolina.

## PARTIES

8.      Plaintiff Todd W. Short is an adult resident of North Carolina. Plaintiff is informed and believes, and upon such information and belief alleges. Wells Fargo Bank, where Plaintiff bank at the time. Filed a Suspicious Activity Report ("SAR") with the Financial Crimes Enforcement Network (FinCEN). In which they alleged Plaintiff had deposited a "counterfeit check" into his checking account. Shortly thereafter, Wells Fargo Bank had determined the check in question was not a counterfeit, it was a "typographical error." The check was paid and cleared Plaintiff's account.

9.      But because the Plaintiff had a prior conviction for mail and wire fraud. FinCEN notified the FBI as to the SAR and on July 16, 2016, or thereabouts, he was placed under criminal investigation by the Federal Bureau of Investigation which has been continuous, without interruption for the last eight-years, which is still ongoing.

3

10.     Defendant FBI Special Agent Michael Boyd ("Agent Boyd") is a sworn officer who is employed by the Federal Bureau of Investigations. At the time of the events at issues. Agent Boyd was acting within the scope of his employment and under the color of law of the United States. He is sued in his individual capacity.

11.     Defendants FBI Special Agent John Doe (1-6) ("Agents (1-6)) are sworn officers who are employed by the Federal Bureau of Investigation and whose real names are unknown at this time. At the time of the events at issue, all Defendant Agents (1-6) were acting within the scope of their employment and under the color of law of law of the United States. They are sued in their individual capacities.

12.     Plaintiff will seek leave to amend the complaint so as to name Agents (1-6) after the completion of additional discovery.

## FACTUAL ALLEGATIONS

13.     The Plaintiff had learned that he was under investigation by the FBI, after he discovered electronic surveillance software had been installed remotely on his computer, and that his internet service had been rerouted to pass through law enforcement's infrastructure.

14.     After discovering the surveillance software and that his internet service had been rerouted. He filed a "Motion to Show Cause," with the United States District Court for the Western District of North Carolina, Asheville Division,[1] as to the FBI's probable cause. The Court denied his "motion," citing he had no legal right to know if he was under investigation. But the court "sealed" the evidence ("evidence of the electronic surveillance software, and how his internet service had been rerouted") he had submitted in support of his " motion."

_____

[1] Plaintiff's criminal proceeding as to his conviction for mail and wire fraud was in United States District Court for the Western District of North Carolina, Asheville Division in 2003, or thereabouts, case # (1:03CR00044-001).

4

15.     The Plaintiff is informed and believes, and upon such information and belief alleges. Because FinCEN had notified the FBI, related to the SRA, Wells Fargo Bank had submitted which triggered the FBI criminal investigation. The FBI had remotely installed the electronic surveillance software on his computer and rerouted his internet service but that the FBI did so without a "warrant or order."

16.     The Plaintiff is informed and believes, and upon such information and belief alleges. Because of the electronic surveillance software installation on his computer. Allegedly the FBI had discovered some incriminating evidence on his computer that suggested Plaintiff had committed a crime(s), but such discovered was made without a valid ("search warrant"), the investigation remained ongoing.

## CHARLOTTE, NORTH CAROLINA
(January 2017 - December 2020)

17.     On  January 3, 2017, or thereabouts, Plaintiff moved to Charlotte, NC. When he became aware the investigation went from non-intrusive to intrusive. The Plaintiff is informed and believes, and upon such information and belief alleges. This is when Defendants Agent Boyd and Agents (1-6) were assigned to the criminal investigation.

**Means, Methods & Manners**

18.     On January 5, 2017, or thereabouts, Defendants Agent Boyd and Agents (1-6), immediately began to utilize ("and continue to utilize") some very invasive investigative tactics the means, methods and manner included, but not limited to:

   a.  Electronic surveillance, which includes the interception of wire, oral, and
       electronic communications, internet service, and wiretaps on (landline, mobile,
       and video) calls,

5

b. Rerouting internet service so it first passes through law enforcement's infrastructure which in part was through a "tap" which occurs in conjunction with the internet service provider then transmitted through law enforcement's Verizon Wireless service. Which allowed mirroring ("multicasting") traffic to and from Plaintiff's IP address at the gateway switch to the "recording" device, allowing them to monitor and record traffic going in either direction as shown by the Routing Tables attached hereto as **Exhibits 1 and 2**.

c. This allows them to monitor, view, and capture all of the Plaintiff's internet activities, 24 hours a day, 7 days a week, 365 days a year, including his login credentials to any website which requires login credentials, such as his bank, insurance company, email accounts, even the portal to physician.

d. Remote installation of electronic surveillance programs/software and coding, (1) on his mobile device(s) in which they could monitor and control; (2) on his computer(s) in his apartment which causes: (a) his computer to connect to law enforcement's infrastructure; and (b) force his computer to only operate as a ("Virtual Desktop") [2] which is hosted on law enforcement's server(s); as shown by the Virtual Database attached hereto as **Exhibits 3.**

e. and (3) install specialized ("computer drivers") on Plaintiff's actual computer(s) those specialized computer drivers which cause,

   i. Redirect Plaintiff's internet activity to a specific website designed by law enforcement that mimicked the actual website, and block Plaintiff from reaching specific websites,

   ii. Eavesdrop on Plaintiff's private conversations in his apartment, through his computer and mobile device,[3]

   iii. Printed to the FBI's root printer on their server(s), anything Plaintiff printer on the printer(s) in his apartment. Defendants Agent Boyd and Agents (1-6) had access to, and

---

[2] A virtual desktop is a preconfigured image of operating systems and applications in which the desktop environment is separated from the physical device used to access it. A virtual desktop looks and feels like a physical workstation. Users experience their desktop exactly the same way every time they log in, no matter which device they are logging into it from.

[3] The FBI can access cell phones and modify them remotely. The device functioned whether the phone was powered on or off, intercepting conversations within its range wherever it happened to be.

    iv.   To control the operating system of Plaintiff's computer in his apartment, which allowed them to install surveillance software/programs, within the registry and operating system files of the computer. It also gave them unfettered access to any external device such as flash drives connected to Plaintiff's computer in his apartment. Additionally, it allows them to forcefully shut Plaintiff's computer down bypassing a normal computer shutdown, this often-caused Plaintiff's computer to be corrupted, which required a reinstall of Windows, and two occasions it caused two different computer to malfunction   that were not repairable.

   f.   Conducted unfettered searches and seizures, 24 hours a day, 7 days a week, and 365 days a year on any of the Plaintiff's devices(s) which includes: (1) cloud based services; (2) mobile phone(s); (3) computer(s) in his apartment; (4) external devices attached to his computer(s) in his apartment, which includes; (a) external hard drive(s); (b) flash drive(s); and (c) printer(s); and his (5) Microsoft One Drive (private cloud storage); (6) Google Drive (private cloud storage; (8) any item which includes; (a) email account(s); sent and received; (b) text messages; (c) documents; (d) notes; (e) drawings; (f) photographs; (g) medical and psychological records; (9) items which Plaintiff stores for family members include items noted in (8)(a)-(g).

**Specific Incidents** [4]

19.    On January 11, 2017, or thereabouts, Defendants Agent Boyd and/or one or more

of Agents (1-6) had Plaintiff's internet service with Charter Communications (hereinafter

"Spectrum,"), without his knowledge or consent, and without probable cause rerouted to first

pass thorough law enforcement's infrastructure as shown by the Routing Table attached hereto as

**Exhibits 4 & 5**, for the purposes fully described in ¶ 18(b).

---

[4] The statute of limitations period for Bivens claims in North Carolina is three (3) years. The present action commenced before the three (3) year limitations period of the alleged violation that occurred in Asheville, North Carolina on beginning on January 6, 2021, and still ongoing. However, plaintiff contends "the continuing violation doctrine" has been applied to a continuous and ongoing series of actions where it is the culminative harm of those actions which predicate a Bivens claim.

Plaintiff's claims involve defendants continuous, consistent, without interruptions means, methods, and manners that amount to unreasonable searches and searches, electronic surveillances, and physical surveillances as such constitute a new Fourth Amendment violation with each passing day and a continuous pattern of actions which caused cumulative harm. As such the continuing violation doctrine is triggered by those continuous unlawful acts.

a. On January 29, 2019, or thereabouts, Defendants Agent Boyd and one or more of the Agents (1-6), had Plaintiff's new internet service with AT&T, and without his knowledge or consent or probable cause, rerouted for the same purpose.

20. Then on or about, January 13, 2017, Defendants Agent Boyd and/or one or more of the Agents (1-6), remotely installed electronic surveillance software, and additional ("specialized computer drivers") on the Plaintiff's computer in his apartment, and without his knowledge or consent, as shown by the Installed Drivers attached hereto as **Exhibits 6,** for the purpose as fully descripted in ¶¶ 18(c) and 18(c)(i)-(iv).

21. On February 8, 2017, or thereabouts, upon information and belief, Defendant Agent Boyd, procured a ("Wiretap Order") on Plaintiff's mobile phone, with mobile carrier, MetroPCS, ("account #488265███"), phone number ("704-670-6529"), and Plaintiff's Google Duo ("video calls"), ("account under shorttoddw@gmail.com").

22. Defendant Agent Boyd allowed the ("Wiretap") to remain in place on Plaintiff's MetroPCS mobile phone and his Google Duo videos calls. From February 8, 2017 through December 28, 2017.

23. Defendant Agent Boyd operated outside the permissible scope and timeframe of the ("Wiretap Order"). Upon information and belief, they did not have an extension, as there was no probable cause.

24. On February 16, 2017, Defendants Agent Boyd and one of the Agents (1-6) conducted a warrantless search of Plaintiff's apartment, and without probable cause. Plaintiff learned of their entry to his apartment, from Arthur Williams, the maintenance man, which worked at the apartment complex (*See* footnote [5] for more details). During their warrantless

---

8

search they attempted to gain access to Plaintiff's safe in his apartment, destroying the lock mechanism in the process as shown by the Safe Photo attached hereto as **Exhibit 8.**

25.     On May 11, 2017, or thereabouts, Defendant Agent Boyd and/or one or more of the Agents (1-6), accessed Plaintiff's devices as fully described in ¶ 18(d)(1)-(6). In which Defendants Agent Boyd and/or one or more of the Agents (1-6), (**"mass copied"**) (**"seized"**) all items as fully described in ¶¶ 18(8)(a)-(g) and 18(9).

26.     On February 20, 2019, or thereabouts, Defendant Agent Boyd obtained a copy of Plaintiff's bank record from his bank T.D. Bank, N.A. Although, Defendant Agent Boyd has limited authority to obtain a ("target's") bank records in the course of a criminal investigation. Om March 9. 2019, Plaintiff filed a complaint on this matter with the Office of the Comptroller of the Currency as shown by the OCC Complaint attached hereto as **Exhibit 9**.

    a.  T.D. Bank, N.A., also gave Defendant Agent Boyd login capabilities to Plaintiff bank account online. Upon information and belief, Defendant Agent Boyd then gave Agents (1-6) login capabilities to Plaintiff's T.D. Bank, N.A., bank account. Defendants Agent Boyd and Agents (1-6) had continuous and uninterrupted access to Plaintiff's T.D. Bank, N.A., bank account up to and including June 18, 2023.

27.     On February 15, 2019, or thereabouts, Plaintiff discovered that Defendants Agent Boyd and/or one of the Agents (1-6). Installed a surveillance monitoring program/coding (**"Without a Warrant"**) within Plaintiff's T.D. Bank, N.A., banking app, installed on the Plaintiff's mobile phone, without his knowledge or consent as shown by the photo of T.D. Bank App Surveillance Program attached hereto as **Exhibit 10**. This surveillance monitoring

---

[5] Plaintiff was informed by Arthur Williams, the maintenance man at the apartment complex where the Plaintiff lived at that time. That two men had enter his apartment at approximately 10:30 a.m., on this day. (Plaintiff was away at a doctor appointment) Mr. Williams had also indicated these two men had been in the office at the apartment complex prior to entering Plaintiff's apartment. Plaintiff assumes that Defendants Agent Boyd and one of the other Agents (1-6) obtained a key to plaintiff's apartment from Imani Mayes, the property manager at the apartment complex (Nia Point Apartments), at that time.

program/coding gave them real-time notification, in detail, on the financial transactions Plaintiff doing on the App., at that time. Defendants Agent Boyd and Agents (1-6), continued to receive these real-time notifications and account details, continuous on or about June 15, 2023.

28.     Defendants Agent Boyd and Agents (1-6)  did not have probable cause, or the (**"required search warrant,"**) which authorized them to have access to Plaintiff's bank account, and/or to search and seize any information, documents, and/or check images, in Plaintiff's T.D. Bank, N.A., bank account continuously for the past 4 years, up to and including June 15, 2023.

29.     From January 5, 2017, through December 30, 2019, Defendants Agent Boyd, and Agents (1-6), without probable cause or judicial warrants, orders, and extensions thereof, continuiousely, without interruption utilized and continue to utilize the means, methods, and manners as fully described in ¶ 18(a)-(d). During which time they also continually keep the Plaintiff under intrusive electronic surveillance and conducted unfettered searches and seizure on Plaintiff's devices and documents, as fully described in ¶ 18(d), 24 hours a day, 7 days a week, 365 days a year.

30.     Defendants Agent Boyd and Agents (1-6)  knew or should have known some of the incidences as fully described in ¶¶ (19)-(30). They utilized means, methods, manners in which they knew they did not have probable cause or judicial authorization. Where at other times they knowingly and willingly, operated outside the permissible scope and timeframe of warrants, orders, and extensions thereof, that were issued.

## Asheville, North Carolina
### (January 2021 to Present)

31.    On January 4, 2021, or thereabouts, Defendants Agent Boyd and Agents (1-6) began utilizing (and continue to utilize) the same means, methods, and manners are fully described in ¶ 18(a)-(d).

## Continuation of Incidences

32.    On January 11, 2021, or thereabouts, Defendants Agent Boyd and/or one or more of Agents (1-6), had Plaintiff's internet service with Spectrum, without his knowledge or consent, and without probable cause rerouted to first pass thorough law enforcement's infrastructure as shown by the (Ash) Spectrum Network Routing Table attached hereto as **Exhibits 11& 12**, for the purposes fully described in ¶ 18(b). (**"Without a Warrant or Order"**)

    a.    Then on June 17, 2023, or thereabouts, directly after Plaintiff added AT&T fiber internet service to his residence. Defendants Agent Boyd and/or one or more of the Agents (1-6) and without his knowledge or consent or probable cause, rerouted for the same purpose. (**"Without a Warrant or Order"**)

33.    On January 7, 2021, or thereabouts, upon information and belief, Defendants Agent Boyd and one or more of the Agents (1-6). Procured an additional ("Wiretap Order"):

    a.    Plaintiff's mobile phone, with mobile carrier, Verizon Wireless, ("account #42583▮▮▮-00001"), and again on Plaintiff's Google Duo ("video calls"), ("account under shorttoddw@gmail.com"). They allowed the ("Wiretap") to remain in place on Plaintiff's Verizon Wireless mobile phone and his Google Duo ("videos calls"). From January 7, 2021 through May 12, 2021, the existing Wiretap Order expired February 15, 2021.

    b.    On January 2, 2022, Defendants Agent Boyd, and Agents (1-6) placed an (**"Unauthorized Wiretap"**) on Plaintiff's new mobile carrier Spectrum Mobile, phone (#828-767-8745) and left the (**"Unauthorized Wiretap"**) in place on Plaintiff's Google Duo ("video calls"). From January 2, 2022 through May 10, 2022.

    c.    On July 3, 2023, Defendants Agent Boyd, and Agents (1-6) placed an (**"Unauthorized Wiretap"**) on Plaintiff's new mobile carrier Mint Mobile,

phone (#828-407-8018) and left the (**"Unauthorized Wiretap"**) in place on Plaintiff's Mint Mobile, mobile phone. From July 3, 2023 to the present.

The Plaintiff is informed and believes, and upon such information and belief alleges,

     i. In May 2023, Defendants Agent Boyd, and Agents (1-6), began using an IMSI catcher ("Stingray") or similar device at the Plaintiff's residence. The IMSI catcher remains in place today.

34.     Defendants Agent Boyd and Agents (1-6) operated outside the permissible scope and timeframe of the second procured ("Wiretap Order"), noted ¶ 34(a). Upon information and belief, they did not obtain extensions, as there was no probable cause.

35.     Defendants Agent Boyd and Agents (1-6) did not have a valid wiretap order on Plaintiff's mobile cells, noted in ¶ 34(b) and (c) and (c)(i). These were (**"Unauthorized Wiretaps"**).

36.     These authorized wiretap extension and the authorized wiretaps were unlawful and serve no purpose but to deprive Plaintiff of his rights on the Fourth Amendment to be free from unreasonable search and seizure, it also denies him a reasonable expectation of privacy.

37.     On or about January 26, 2021, Plaintiff discovered Defendant Agent Boyd and/or one or more of the Agents (1-6) . Remotely installed an additional surveillance program/coding on the Plaintiff's computer in his apartment for the purpose as fully descripted in ¶ 18(c).

38.     The surveillance program/coding is **called** ("**HIVE**"), as shown by the Hive Program/Coding installed on Plaintiff's computer attached hereto as **Exhibit 13**.

**Electronic Surveillance on Family**

39.     On January 21, 2021, or thereabouts, Defendants Agent Boyd and/or one or more of the Agents (1-6) . Had Shirley Tressie's (Plaintiff's mother) internet service, also with Spectrum rerouted, without her knowledge or consent so that it first passes through law enforcement's infrastructure as shown by Ms. Tressie's Spectrum Routing Tables attached hereto as **Exhibits 14, 15 & 16**, *in part*, for purpose as fully described in ¶ 18(b).

40.     On January 22, 2021, or thereabouts, Defendants Agent Boyd and/or one or more of the Agents (1-6). Had Robyn Morris' (Plaintiff's sister) internet service, also with Spectrum rerouted, without her knowledge or consent so that it first passes through law enforcement's infrastructure as shown by Ms. Morris Spectrum Routing Tables attached hereto as **Exhibits 17 & 18**, *in part*, for purpose as fully described in ¶ 18(b).

41.     On February 8, 2021, or thereabouts, Defendants Agent Boyd and/or one or more of the Agents (1-6). Remotely installed electronic surveillance program/coding the (**"HIVE"**), as noted in (*See* Ex. "12"), on Ms. Morris' MacBook Air, without her knowledge or consent, *in part*, for the purposes as fully described in ¶ 18(c)

42.     However, has also forced Ms. Morris' MacBook Air to operate as a ("Virtual Desktop"), which has been continuous for **two-and-a-half years** as shown by Ms. Morris MacBook Air System Files attached hereto as **Exhibits 19, 20 & 21**.

43.     On February 23, 2021, Plaintiff discovered Defendants Agent Boyd and/one or more of the Agents (1-6) and working in concert with one another. Remotely installed additional electronic surveillance program/coding within the system operating files on Plaintiff' computer in his apartment, without his consent or knowledges as shown by Unauthorized NCDES Surveillance Program/Coding attached hereto as **Exhibits 22**.

13

44.     This type of surveillance coding allowed Defendants Agent Boyd and Agents (1-6) remote access to Ms. Morris' North Carolina Division of Employment Security ("NCDES"), unemployment file which included her unemployed claim for part of (2020-2021), which she had no knowledge or did she give her consent.

45.     Defendants Agent Boyd and Agents (1-6), have been fully aware that Ms. Morris had requested the Plaintiff her weekly unemployment claims, based on the information she provided the Plaintiff. She has been eligible for each weekly unemployment benefit she received. She simply could not figure out how to file on-line.

**Improper Motive - Improper Purpose**

46.     Defendants Agent Boyd and Agents (1-6), true intended purpose for rerouting Ms. Tressie and Ms. Morris' internet and installing the surveillance program/coding on Ms. Morris' MacBook Air, and the monitoring surveillance software on the Plaintiff's computer as it relates to Ms. Morris' unemployment files was so that:

    a.  Defendants Agent Boyd and Agents (1-6) wanted to have to ability to keep the Plaintiff under 24/7/365 electronic surveillance when he visited or stayed with them,

    b.  They forced Ms. Morris' MacBook Air to operate as a Virtual Desktop and connect to law enforcement's server(s) so they could monitor her computer in case Plaintiff used it while at her house,

        i.  To be able to capture, all activity on the internet and Ms. Morris' MacBook Air,

        ii.  Search Ms. Morris' MacBook Air and seize any document or file on there they feel will help ("get") the Plaintiff; and

        iii.  Installed the unemployment monitoring software on Plaintiff's computer in hopes of catching him doing something nefarious; one of the other reasons they want to monitor Ms. Tressie and Ms. Morris' internet.

47.     Defendants Agent Boyd and Agents (1-6) have no probable cause warranting this type of intrusion on the private lives of Ms. Tressie and Ms. Morris' lives, on the speculation that ("just maybe he will") Plaintiff will commit a crime and will "get him." **Speculation does not equal probable cause.** But it does again demonstrates how much animus Defendants Agent Boyd and Agents (1-6) have towards Plaintiff.

48.     There is no amount of reasonableness which would justify Ms. Tressie and Ms. Morris having to endure this intrusive electronic surveillance continuously without interruptions for the **past three-and-a-half years,** which is still ongoing. Not only does this deprive, and continue to deprive, Ms. Tressie, Ms. Morris, and the Plaintiff of their rights under the Fourth Amendment to be free from unreasonable searches and seizures, it also denies them their expectation of privacy.

**Coercion**

49.     From February 16, 2021 – May 12, 2021, **("unauthorized wiretap timeframe")** during these three months the Plaintiff conversed his long-time friend Brett Kubasiak, who resides in Bronson, Michigan in a couple dozen via Google Duo video calls (hereinafter "video calls"). During some of their video calls the Plaintiff told Mr. Kubasiak that the quality of the video was so bad was being the FBI was monitoring the video calls.[6]

50.     On more than one occasion, Defendants Agent Boyd, and Agents (1-6) had allegedly heard Mr. Kubasiak and Plaintiff, independent from each other, make off-the-cuff remarks that were self-incriminating.

---

[6] Plaintiff's determined his Google Duo videos calls were being monitored, listened to, and recorded, due to the repeated interference ("video latency") in each live video chat, (such as a man-in-the-middle attack), when a tap, occurs in the live video transmission, especially today when the industry standard "full HD," 1080 (1920 x 1080 pixels) that creates a crisp HD digital video. Here, each of the Plaintiff's video calls were degraded in their quality of pixels making the video somewhat distorted, with a decreased color depth and decrease in sound level.)

51.     The Plaintiff is informed and believes, and upon such information and belief alleges. That because Defendants Agent Boyd and Agents (1-6) had received these self-incriminating statements from the Plaintiff, obtained through an unlawful wiretap for approximately three months, *see* ¶ 34(a)-(b). They needed to find a way to use these incriminating statements of the Plaintiff and make it look like they got the information from an independent source ("witness").

52.     The Plaintiff is informed and believes, and upon such information and belief alleges. On or about April 20, 2021, Defendants Agent Boyd, and Agents (1-6) formulated a scheme in which they use the unlawfully obtained self-incriminating statement of Mr. Kubasiak to force him into making a statement or give testimony against the Plaintiff since he was part of those conversations. They knew Mr. Kubasiak had talked about his illegal drug use and selling ("methamphetamines") to his friends.

53.     The Plaintiff is informed and believes, and upon such information and belief alleges. On May 18, 2021, or thereabouts, Defendants Agent Boyd and Agents (1-6) working in concert with one another. Contacted the Michigan Drug Enforcement Team, ("MDET") and sought their assistance to cause Mr. Kubasiak to be arrested on a drug possession charge.[7]

54.     The Plaintiff is informed and believes, and upon such information and belief alleges. On July 13, 2021, or thereabouts the MDET, through one of their confidential informant ("CI") caused Mr. Kubasiak to be in possession of methamphetamines when the CI and Mr. Kubasiak were traveling to Kalamazoo, Michigan. During the trip, the CI had removed the

---

[7] The plaintiff is informed and believes, and upon such information and belief alleges that defendants Agent Boyd and/or one or more of the Agents (1-6). Informed MDET the reason they needed Mr. Kubasiak to be arrest was because he had incriminating evidence of the plaintiff the ("target") of the criminal investigation in North Carolina, and there was no other way to extract this information from him.

license plate from her vehicle prior to the trip. The Michigan State police had been alerted, the CI and Mr. Kubasiak were pulled over on the highway, the probable cause, the "missing license plate." The Michigan State police discovered 2 grams of methamphetamines on Mr. Kubasiak. He was not arrest, instead he was told the district attorney would be in touch.

55.     Then on or about January 3, 2022, the Branch County District Attorney, in Coldwater, Michigan caused a warrant [8] to be issued for Mr. Kubasiak's arrest on the drug possession. Mr. Kubasiak was arrested and transported to the Branch County Detention Center. Where either Defendant Agent Boyd and/or one or more of the other Agents (1-6) , or another (Michigan law enforcement agent or Agents, working on their behalf), were waiting.

56.     Once Mr. Kubasiak arrived at the detention center, he was immediately accosted by either Defendant Agent Boyd and/or one or more of the Agents (1-6) or another law enforcement agent or Agents. He was given an ultimatum, either to provide Defendants Agent Boyd and Agents (1-6) the information he was privy to during the video calls where Plaintiff had allegedly made self-incriminating statements. <u>Or they would pressure the Branch County District Attorney to send him to "prison," on the possession charge</u>. As this was Mr. Kubasiak's second drug possession charge. Kubasiak after being intimidated and threatened, and fearful of going to prison. Gave into the coercing threats of Defendants Agent Boyd and Agents (1-6) and gave a statement and/or testimony [9] against the Plaintiff, as to his allegedly self-incriminating statements made during those video calls. Plaintiff learned of these facts from one of Mr.

---

[8] State of Michigan v. Brett Kubasiak, 15th Circuit Court – Coldwater, Case ID: 2022-0000013353-FH, date filed, January 25, 2022, date closed, June 27, 2022 (Arraignment date, February 14, 2022), Mr. Kubasiak's attorney, Matthew L. Glaser.

[9] Upon information and belief Mr. Kubasiak has already given or will being testimony to the Grand Jury.

17

Kubasiak friends in Bronson, Michigan as shown by the Garrett Email (Kubasiak) attached hereto as **Exhibit 23**.

57.     Defendants Agent Boyd and Agents (1-6), law enforcements agents scheme was not just illegal. They intentionally, willingly, and recklessly and with forethought deprived Mr. Kubasiak of his constitutional rights under the Sixth Amendment to the United States Constitution.

58.     Mr. Kubasiak was denied ("a compulsory process for obtaining witnesses"), those witnesses being Defendants Agent Boyd and Agents (1-6). Had Mr. Kubasiak's attorney been made aware of these extremely key facts, and that he was set up based on unlawful wiretaps, it is a high probability the charge would have been dismissed.

59.     Plaintiff spoke with Mr. Kubasiak on July 14, 2023, who hinted is it went down. But because Defendant Agent Boyd had told him not to communicate with the Plaintiff on these matters or their investigation. On threat that he would be facing an ("obstruction charge").

60.     What Mr. Kubasiak did say to the Plaintiff at the close of the call was the statement (**"they are out to get you at any cost").**

61.     Defendants Agent Boyd and Agents (1-6) (**"unauthorized wiretap"**) violated Title III. (¶¶ 34(a)-(b). As such constitutes an unreasonable search and seizure and deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution and denied Plaintiff of his reasonable expectation of privacy.

**Search & Seizure on Family**

62.     On February 8, 2022, Plaintiff went to visit his mother's Shirley Tressie. He brought with him his mini-hard drive as he was concerned the mini-hard drive was no longer safe at his apartment. He felt it best to have his mother hold it for safe keeping.[10] It was decided later that morning the Plaintiff and his mother would go back to his apartment for a few days.

63.     It was later that day someone had entered Ms. Tressie's apartment, without her knowledge or consent, searched her apartment and the only item seized was the Plaintiff's mini-hard drive as shown by Photo of the Mimi-Hard Drive attached hereto as **Exhibit 24**.

64.     The Plaintiff is informed and believes, and upon such information and belief alleges. Defendants Agent Boyd or one of the Agents (1-6) had at some point remotely installed a ("tracking chip")[11] in the mini-hard drive. It is conceivable how else they would have known to the Plaintiff's mother's apartment and seize a mini-hard drive he had just taken there.

65.     Defendants Agent Boyd and Agents (1-6) knew the mini-drive's stored data included, but not limited to; over 300 pieces of evidence[12] Plaintiff had amassed since February

---

[10] Plaintiff, anticipated and anticipates, being indicted shortly. The data stored on the mini-hard drive would be needed for his defense.

[11] The installation of a "tracking device, i.e., tracking chip installed within a device" requires a judicial warrant. Defendants Agent Boyd and Agents (1-6) had no probable cause that would warrant the remote installation of a tracking device of the mini-hard drive. They had access on multiple occasion since January 2017. They knew there had never been any evidence on the drive that a crime had been committed or was planning to be committed.

[12] The evidence included printouts and photographs of programs, computer coding, software, specialized computer drives that had remotely installed on Plaintiff's and his sister's computer. Printouts and photographs of network routing table as to the rerouting of mother's and sister's internet for over 3 ½ years, and the rerouting of his internet service for 6 ½ years. Network routing tables, showing his sister and his computers were forced to operate only as Virtual Desktop connected to law enforcement's server(s). IP configurations, WI-FI network names, and proxy setting all which he believed where associated with law enforcement's utilization in the criminal investigation. Defendant Agent Boyd and Agents (1-6) utilized since February 2017. Logs of questionable other occurrences, photographs of suspected vehicles used to surveil him over the years, notations of some of the tag numbers for those vehicles, even some descriptions of the individuals in those vehicles. Records of attorneys, physicians, mental health providers and other individuals Plaintiff had discussed the criminal investigation with over the last several years, and as to intrusiveness of the investigation how it seemed very personal like someone was being vengeful.

2017, as to the means, methods, and manners they have utilized and continue to be utilized not just on the Plaintiff but also on his family. Means, methods, and manners that have run afoul the very principles of the Fourth Amendment to the United States Constitution.

66. The Plaintiff is informed and believes, and upon such information and belief alleges. On Janudelete022, Agent Boyd remotely accessed the mini-hard drive while it was attached to Plaintiff's computer in his apartment and caused the deletion of stored data ("3 out of 12 folders"), [13] folders which contained evidence against them, and that his intentions that day was to delete on twelve folders.

67. It is also questionable how Agent Boyd and Agent (1-6) could have obtained a "search warrant" within hours of the Plaintiff and his mother leaving her apartment. But also, how they could have known to tell the court what it was they wanted to seize was a mini-hard drive that had just been taken there.

68. Furthermore, there was no probable cause warranting a ("search warrant") to be issued. Agent Boyd and/or one of the other Agents (1-6) would have had to intentionally make false statements in one or more of their affidavits. To purposely deceived the court into issuing the "search warrant," and thereby acted in bad faith.

---

The mini-hard drive also contained hundreds of private documents and records of the Plaintiff's and family members, the Plaintiff's medical and psychological records dating back to 1993, programs and software purchased over the last several years, also a collection of gay adult (18+) videos Plaintiff had collected over the years.

[13] On January 27, 2022, Plaintiff was at his apartment, using his computer, the mini-hard drive identified in Ex. 22 was connected externally to one of the computer's front Universal Serial Bus (USB). At approximately 2:10 p.m., someone had remotely accessed the mini-hard drive, as the ("activity light was flashing") meaning the drive was in use. After the activity light continued to flash for close to five (5) minutes. As a precaution Plaintiff shut his computer down, which caused the remote connection to the min-hard drive to disconnect. Plaintiff then turned his computer back-on and accessed the mini-hard drive and discovered that three (3) of the twelve (12) folders had been deleted from the mini-hard drive.

69.     Since a notice as to the search warrant and inventory of what was seized was not provided, Ms. Tressie or the Plaintiff. It would suggest they also sought a ("delay notice") in bad faith. A delay notice is only issued when certain circumstances are met, such as to not tip the person being searched because it led them to know they were under investigation. Thereby giving them a chances to flee, intimidate potential witnesses, destroy evidence, obstruct the investigation, or that it could cause a dangerous situation to another's life or property.

70.     Defendants Agent Boyd and Agents (1-6) knew the Plaintiff had been aware of the investigation for years. During which time he has made no effort to flee, intimidate potential witnesses, even if those witnesses were family members. They also know Plaintiff has destroyed no potential evidence that a crime had taken place or was being planned. Nor had the Plaintiff obstructed the investigation in any way, and they knew Plaintiff has no history of violence.

71.     Defendants Agent Boyd and Agents (1-6), acted in bad faith and for an improper purpose in procuring the search warrant. Especially when there was no probable cause. Their ill-intended actions constitute an unreasonable search and seizure and deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution.

**Physical Surveillance Plaintiff's Apartment**

72.     The Plaintiff is informed and believes, and upon such information and belief alleges. That on or about February 6, 2023, Defendants Agent Boyd, and Agents (1-6), began utilizing an apartment at the property where the Plaintiff resides for close physical extremely intrusive surveillance. The apartment is located at 3 Carmel Ridge Circle, Apt. 302, Asheville, NC, and directly across from the Plaintiff's apartment.

73.    This type of physical surveillance 24 hour a day, 7 days a week, serves no other legitimate purpose other than to serve their purpose to attempt to intimidate and harass the Plaintiff right where he lives.

    a.  It does appears the apartment is being used for:

        i.  A stationary location for what appears to be an IMSI catcher [14] which is forcing the Plaintiff's phone to connect to it instead of an actual mobile tower.

        ii. That they are also using the IMSI catcher to "jam" Plaintiff's mobile phone frequently which then creates "**no service**." This creates an extremely dangerous situation in which the Plaintiff, who has numerous health issues, cannot call 911 if needed.

    b.  There are also two (2) unknown devices 15 that appear on Plaintiff's WI-FI network, which is already bridged into law enforcement's infrastructure, connecting through their Verizon Wireless service. The two (2) devices appear to be either tablets or notebooks. Plaintiff cannot remove these unknown devices from his WI-FI network. Assumedly the devices are being utilized in apartment #302 by the contractors or low-level agents who are actually conducting the physical surveillance. To have the ability to view Plaintiff's mobile and internet activities while he's at home since his device connects to his WI-FI network.

74.    Defendants Agent Boyd and Agents (1-6) are engaging in intimidation tactics, amounts to intrusion upon seclusion, and Plaintiff believes such constitutes an unreasonable search and seizure and deprives the Plaintiff of his rights under the Fourth Amendment to the United States Constitution, and it denies him of a reasonable expectation of privacy.

---

[14] IMSI catchers, also known as cell-site simulator, are devices that masquerade as legitimate cell-phone towers, tricking phones within a certain radius into connecting to the device rather than a tower. The only work when is close proximally to the ('target's") cell phone.

[15] Plaintiff believes these device at be utilized by the Agents who occupy Apartment #302, at any given day and time. That the devices allow them to monitor in real-time Plaintiff's Virtual Desktop which is connected directly to law enforcement infrastructure (the FBI and/or SBI's Verizon Wireless service.) Also, the devices allow the Agents from that apartment the ability to eavesdrop on the Plaintiff into his apartment at any time (this might account for why Agents seem to be at the ready, when Plaintiff leaves his apartment.)

**Physical Surveillance Plaintiff's Mother's Apartment**

75.    The Plaintiff is informed and believes, and upon such information and belief

alleges. That on or about April 19, 2023, Defendants Agent Boyd, and Agents (1-6), began

utilizing an apartment at the property where Plaintiff 's mother  resides. The apartment is located

at 811 Cranbrook Drive, Arden, NC.

   a.   It does appears the apartment is being used for the same purpose as fully
        descripted in ¶¶ 74(a)(i)-(ii) and 74(b)

76.    Defendants Agent Boyd and Agents (1-6) are engaging in intimidation tactics,

amounts to intrusion upon seclusion, and Plaintiff believes such constitutes an unreasonable

search and seizure and deprives not only the Plaintiff of his rights under the Fourth Amendment

to the United States Constitution, but those of Ms. Tressie's, and it denies them of a reasonable

expectation of privacy.

**The Scheme**

77.    Plaintiff has had his Google Account for years. He has sent and received hundreds

of emails, listed all his contacts, posted important, and not so important appointments, birthdays,

and other events, on his calendar. Plaintiff has used or still using, Google services that include:

   (1) Gmail, which includes all emails; (2) Google Contacts; (3)
   Google Photos; (4) Google Docs; (5) Google Calendar; (6) Google
   Chats; (7) Google Voice; (8) Google Sheets; (9) Google One; (10)
   Chrome; (11) Google Fi (wireless service)
                    (collectively "**Google Account**").

78.     But it is the Google Drive [16] (hereinafter, "Drive") where an individual stores, records, documents, photographs, notes, and other non-tangible property. Drive is private, secure, vault, but in the cloud.

79.     Plaintiff has used and continues to use his Google Account and Drive almost daily. In his Drive he has stored, and has stores, hundreds of documents, records, and photographs, not just for himself, but also for his family.

80.     It was on or about January 12, 2017, when Plaintiff first discovered that Defendants Agent Boyd  and Agents (1-6) had access to Plaintiff's Google Account and his Drive. Where for the last six-and-a-half years they have had, and continue to have, unfettered access to Plaintiff's Google Account and his Drive. This has allowed them to seize any document, records, item, photograph, and audio recording with no accountability.

81.     The Plaintiff is informed and believes, and upon such information and belief alleges. Defendants Agent Boyd and Agents (1-6). Had probable cause at the onset of the criminal investigation and were able to obtain a search warrant or warrants and extensions thereof. Those warrant(s) and extension(s) authorizing them to seizure what they sought in their sworn statements.

82.     The Plaintiff is informed and believes, and upon such information and belief alleges. Defendant Agent Boyd and Agents (1-6), **certainly did not have any search warrants** or extensions thereof, issued in perpetuity that has been continuous, without interruption for the last six-and-a-half years, that also gave them unfettered access to everything and anything.

---

[16] Google Drive you can store, share, and collaborate on files and folders and it can provide encrypted and secure access to your files. Files shared with you can be proactively scanned and removed when malware, spam, ransomware, or phishing is detected. And Drive is cloud-native, which eliminates the need for local files and can minimize risk to your devices.

83.     Plaintiff contends that during the past six-and-a-half years. Defendants Agent Boyd and Agents (1-6) have searched the Plaintiff's Google Account and Drive on multiple occasions and seized records, documents, notes, photographs, and audio recordings. Searches and Seizures that were not authorized by the court.

84.     The Plaintiff is informed and believes, and upon such information and belief alleges. Defendants Agent Boyd and Agents (1-6) have devise a scheme that would allow them to properly account for the documents, records, notes, drawings, photographs, and audio recording they seized over the last six-and-a-half years.

85.     In which there: (1) no probable cause; (2) no valid search warrant; (3) and no inventory of items they did seize and in their possession which they may want to use as evidence.

86.     The Plaintiff is informed and believes, and upon such information and belief alleges. Defendants Agent Boyd and Agents (1-6), plan, which has been conducted. Was excocted in four (4) stages; (1) the entrapment; (2) covert entry warrant; (3) sneak and peek warrant; and (4) the general warrant.

**The Entrapment**

> ("For purposes to keep the **Agent** identify as to a specific allegation. Plaintiff alleges this Agent that took part in the entrapment is an agent with the FBI. Plaintiff will identify him or her as Agent (6) which is applicable throughout the complaint. His or her phone number was or still is (828) 457-███")

87.     On May 27, 2023, or thereabouts, Plaintiff received a text message from Agent (6) who claimed to have met Plaintiff on Grindr. Plaintiff, knowing he had never met anyone (in person") from Grindr.

>   a.  *Jokingly asked Agent (6)  ("if he was one the one Plaintiff met last week at a hotel and gave $2,000"). ("Plaintiff made no reference to sex").*
>
>   b.  *Agent (6)  then asked Plaintiff ("if he used Venmo to pay these men.").*

25

88.     Agent (6) personally knew the Plaintiff; (1) had never met anyone in person from Grindr; (2) never arranged to meet anyone from Grindr for the purpose to pay them for sex; and (3) never paid anyone for sex. Therefore Agent (6) knew Plaintiff had never used Venmo or any other method of payment for the purpose of paying for sex, As Defendants Agent Boyd and Agents (1-6), have had the Plaintiff under constant and continuous, without interruption, electronic surveillance for six-and-a-half years.

89.     Plaintiff suspected this unknown individual Agent (6) was associated with Defendant Agent Boyd.

      c. *So, he texted this unknown individual (Agent (6)) from a different number and pretended to be a colleague of this unknown individual (Agent (6)) and asked if he wanted to go out after work and have a drink with some friends.*

      d. *(Agent (6)) told the Plaintiff he had the wrong number ("person").*

      e. *Plaintiff then asked the unknown individual (Agent (6)) if he was Michael Boyd.(Agent (6)) (("texted back saying ("I don't know how his ("Michael Boyd") number get mixed up mine."))*

90.     Plaintiff knew, in that moment that the unknown individual Agent (6) claiming to have met him on Grindr, when of the Agents involved in the criminal investigation.

      f. *Plaintiff not only texted (Agent (6)) back, but he also texted Defendant Agent Boyd ("Plaintiff has his cell number").*

91.     Telling them both that he knew they were trying to entrapment him for ("solicitation.") Agent (6) did not communicate further with the Plaintiff, and Defendant Agent Boyd did not respond. What the Plaintiff couldn't figure out right then, was why Agent (6) wanted to entrap him on a misdemeanor charge?

As shown by the Grindr Text Exchanges attached hereto as **Exhibit 25.**

**Convert Entry Warrant**

92.     On May 31, 2023, at approximately 9:30 a.m., someone had entered the Plaintiff's apartment while he was going. They spent approximately thirty (30) minutes in the apartment and then left. Plaintiff knows this for a fact, as he was audio recording [17] his apartment in his absence that day.

93.     The Plaintiff is informed and believes, and upon such information and belief alleges. There was only one individual who entered Plaintiff's apartment. Which one can tell from the audio recording it appeared to be just one person quietly rummaging around. [18] The Plaintiff is informed and believes, and upon such information and belief alleges that individual was Defendant Agent (6).

94.     The only item taken or seized was a flash drive. There was nothing illegal, evidence of a crime or that a crime was planned on the flash drive. [19]

95.     The Plaintiff is informed and believes, and upon such information and belief alleges. That the Grindr exchange with Defendant Agent (6) was to establish probable cause so the court would authorize a search warrant on Plaintiff apartment. However, Defendant Agent (6) would not have probable cause based on the Grindr exchange.

---

[17] Plaintiff has reason to believe over the last six-and-a-half years. Defendants Agent Boyd and Agents (1-6) have conducted warrantless searches and seizures on his apartment several times. It would appear they are provided a key to Plaintiff's apartment from the property managers, which was the case in Charlotte, NC, noted in ¶ 24. It would appear that the property manager's felt they are required to turn over a key to someone's apartment when the FBI request or demand a key to a ("target's")'s because they indicate that individual is under a federal criminal investigation.

[18] The audio recording from that day has been preserved and is available to the defendants and the Court.

[19] Its contents included Robyn Morris' (plaintiff's sister), 2021 federal and state income tax records, and her 2020-2021 unemployment records. The flash drive also contained some additional medical records of the plaintiff.

96.     Plaintiff made no reference to sex, nor did he make any remarks in his texts that could be interpreted as solicitation. Even when Defendant Agent (6) asked Plaintiff how he paid these alleged men, through Venmo? Plaintiff did not respond to that ("text").

97.     The Plaintiff is informed and believes, and upon such information and belief alleges. Agent (6) intentionally acted in bad faith, provided false information in his sworn statement for the purpose of misleading the Court so that a search warrant would be issued, and which was issued.

98.     Since there was no notice provided to the Plaintiff, a search and seizure had taken place and his flash drive seized. Defendant Agent (6) is believed to have  requested a "delay notice," which such request mislead the Court again.

99.     Plaintiff has been fully aware of the investigation for 8 years. He has made no effort to run, hide, destroy any potential evidence, obstruct justice in any way, nor intimidate any potential witness for government which includes his mother and sister. As, a "delay notice," was not warranted, but it was necessary for Defendants Agent Boyd and Agents (1-6) , to execute all four stages.

100.     On June 12, 2023, Plaintiff filed a police report as to the unlawful entry to his apartment, and the stolen flash. [20] as shown by the Sherriff Police Report attached hereto as **Exhibit 26.**

---

[20] On June 12, 2023, Plaintiff filed a police report with the Buncombe County Sherriff's Department as to the unlawful entry into his apartment and the missing/stolen flash drive. Case # 2023-003869.

**The Sneak and Peer Warrant**

101.    The Plaintiff is informed and believes, and upon such information and belief alleges. On the morning of June 1, 2023, upon information and belief, Defendant Agent (6) went back to the same Court that issued the covert warrant. Defendant Agent (6) proclaimed to have find evidence of a crime(s) at Plaintiff's apartment ("Which they knew to be false, to obtain the search warrant in bad-faith, and to again mislead the Court.")

102.    However, Defendant Agent (6) just wanted to peek around at what was in the Plaintiff's Google Account. ("This was a necessary step in the scheme because they knew what they needed to tell the Court what they requested to be seize. Which they had already obtained unlawfully, and they need to have way to account for the seized items.")

103.    On June 1, 2023, later that day, Google, LLC, received a ("search warrant") ("seek and peek") served on Plaintiff's Google Account. Google listed the notice mistakenly in the Plaintiff's account, as internal case #1-3289000034215 as shown by the Google Legal Notice attached hereto as **Exhibit 26.**

104.    The Plaintiff is informed and believes, and upon such information and belief alleges. Defendants Agent Boyd and Agents (1-6) accessed Plaintiff's Google Drive. As it is Plaintiff's Drive where they had seized documents, records, and audio recordings, **without probable cause or a valid warrant or warrants.**

**The General Warrant**

105.    The Plaintiff is informed and believes, and upon such information and belief alleges. On June 8, 2023, or thereabouts, either Defendants Agent Boyd and/or one or more of the Agents (1-6). Again, went back to the same Court . Indicting they had probable cause for another search warrant to be issued on Plaintiff's Google Account.

29

106. This time they specifically named the documents, records, and audio recordings to seize (the items they had already seized.) These Defendants acted in bad faith, misled the Court intentionally by providing false statements and for an improper if not illegal purpose.

107. The Court issued the search and seizure warrant and on June 8, 2023, Google, LLC, received another ("general search warrant") on Plaintiff's Google Account. Google listed the notice mistakenly in the Plaintiff's account, as internal case #0-9189000034034, which indicated another search warrant was received on Plaintiff's Google account, as shown in the Google Legal Notice *See* Exhibit 26.

108. The Plaintiff is informed and believes, and upon such information and belief alleges. Defendants Agent Boyd and Agent (6) returned the inventory of the items they claimed to have received, thus making the items the unlawfully seized "admissible." Again, deceiving the Court for an improper purpose.

109. The Plaintiff is informed and believes, and upon such information and belief alleges. The Defendants scheme as fully described in ¶¶ 78-109. No reasonable individual would think this scheme so carefully planned and executed would be a reasonable search and seizure even one an individual under a criminal investigation.

110. Defendants Agent Boyd and Agents (1-6) egregious conduct as fully described in ¶¶ 78-109 was for an improper purpose. Not only did they act in bad faith and intentionally mislead the Court once, but they deceived the Court three times.

111. Defendants Agent Boyd and Agents (1-6) actions, inaction, and unlawful conduct at times, in which the often-foregone obtaining ("judicial authorization"). Where at other times throughout the last six-and-a-half years of their involvement in the criminal investigation of the Plaintiff. They seemed to not even hesitate to operate outside the permissible scope and timeframe of warrants, orders, and extensions thereof.

112. Due to the totality of the instances as fully described in ¶¶ 18-109 the Plaintiff's criminal investigation has been a six-and-a-half-year continuous unreasonable search and seizure. It deprived, and continues to deprive, Plaintiff of his rights under the Fourth Amendment to the United States Constitution.

## INJURIES TO PLAINTIFF

113. As a direct and proximate result of conduct of Defendant Agent Boyd and Agents (1-6). Plaintiff suffered substantial damages including, economic damage, for loss of property caused by Defendants Agent Boyd and Agents (1-6), malicious programs/software and coding installed on Plaintiff electronic equipment, including his computers, printers, and mobile devices, cost for premium monthly service fees paid to each service providers for six-and-a-half years. In which the actual services were degraded due to the interference of these services intentionally caused by Defendant Agent Boyd and Agents (1-6), through their reroutes, wiretaps, electronic surveillance and search and seizers.

114. Plaintiff also suffered substantial damages, including invasion of privacy, substantial emotional distress and harm, and physical harm caused by the emotional distress, including difficulty sleeping, nightmares, difficulty focusing on daily tasks, difficulty eating, and changed behavior in enjoyment of everyday life.

31

115.    In causing Plaintiff medical cost for increased mental health treatment and services, including medical cost associated with being hospitalized over sixteen times in the last six-and-a-half due to the intentional, harassing, and intrusive means, methods, and manners Defendants Agent Boyd and Agents (1-6) utilized on Plaintiff and his family for six-and-a-half years.

116.    Plaintiff is in fear of additional illegal surveillance and other actions by Defendants Agent Boyd and Agents (1-6) or someone acting on their behalf. Plaintiff is in fear of additional invasions into his home, interference in contractual relationships, and government benefits, on future words, phone calls, emails, and actions, however innocent, may be similarly misused by Defendants Agent Boyd and Agents (1-6) or someone acting on their behalf.

117.    Defendants Agent Boyd and Agents (1-6) caused the wide-ranging searches and seizures of Plaintiff and his families telephone conversations, email, and test messages thus subjecting Plaintiff and his family to broad invasions of private communications.

118.    Defendants Agent Boyd and Agents (1-6) caused the search and/or seizure without probable cause of the personal belongings, including computers, mobile devices and cloud storages of Plaintiff and his family, thereby depriving them of the use of those belongings.

# CONSTITUTIONAL CLAIMS

## COUNT I

### (Unlawful Search and Seizure – Electronic Surveillance)
### (Under the Fourth Amendment)

(Against Defendants Agent Boyd and Agents (1-6))

119.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

120.    Specifically, as set forth in ¶¶ 19, 20-25, 28, 30, 33, 34, 36, 38, 42, 44, 50, 74(a)(i)-(ii) and 76(a), but not limited to.

121.    Defendants Agent Boyd and Agents (1-6) at all relevant times in the complaint were acting under the color of law of the United States. When they violated provisions of Title III, and other federal statutes which requires "judicial authorization:"

122.    To intercept wire, oral, and electronic communications, internet service, landline, mobile, and video communications, including the monitoring, viewing, and capturing of data transmitted through wire, oral, and electronic communications, including the internet service, landline, mobile, and video communications.

123.    Judicial authorization required to install computer drivers, programs, software, and coding in electronic devices for the purpose of intercepting the communications and data of electronic devices.

124.    Defendants Agent Boyd and Agents (1-6) at times, knowingly operated outside of permissible scope and timeframe of orders, and extensions thereof which authorized them to "intercept wire, oral, and electronic communications, internet service, landline, mobile, and video communications, monitoring, viewing, and capturing of data transmitted through wire, oral, and electronic communications, including the internet service, landline, mobile, and video

communications and the install computer drivers, programs, software, and coding in electronic devices for the purpose of intercepting the communications and data of electronic devices.

125. Defendants Agent Boyd and Agents (1-6) in many instances over the last six-and-a-half years lacked in probable in procuring "orders and extensions thereof" to intercept Plaintiff's wire, oral, and electronic communications, internet service, landline, mobile, and video communications, to monitor, view, and capture data transmitted through wire, oral, and electronic communications, including the internet service, landline, mobile, and video communications and to install computer drivers, programs, software, and coding on Plaintiff's electronic devices for these purposes. In which they knowingly and/or recklessly made false statements and representations and material omissions of facts in relevant affidavits and in bad faith in procuring these orders and extensions thereof.

126. The actions of Defendants Agent Boyd and Agents (1-6) in causing the interception of Plaintiff's communications and data or the searches of Plaintiff's electronic devices without judicial authorization or in which they operated outside the permissible scope and timeframe of those orders and extensions thereof violated Plaintiff's clearly established constitutional rights to be free from unlawful and/or unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, and denied Plaintiff of a reasonable exception to privacy.

## COUNT II

### (Unlawful Search and Seizure – Property)
### (Under the Fourth Amendment)

(Against Defendants Agent Boyd and Agents (1-6))

127.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

128.     Specifically, as set forth in ¶¶ 19, 20-25, 27, 28, 29, 30, 33, 34, 35, 38, 40, 41, 42, 44, 45, 50, 63-71, 74(a)(i)-(ii), 76(a), 81-87 and 93-108, but not limited to.

129.     Defendants Agent Boyd and Agents (1-6) at all relevant times in the complaint were acting under the color of law of the United States. When they conducted searches and seizures on Plaintiff's property which requires "judicial authorization" in which Defendants Agent Boyd and Agents (1-6) sought no judicial authorization to conduct those searches and searches and seizures.

130.     Defendants Agent Boyd and Agents (1-6) at other times, knowingly operated outside of permissible scope and timeframe of the "search warrants and extensions thereof" they were authorized to conduct.

131.     Defendants Agent Boyd and Agents (1-6) in many instances over the last six-and-a-half years lacked in probable in procuring "search warrants and extensions thereof" In which they knowingly and/or recklessly made false statements and representations and material omissions of facts in relevant affidavits and in bad faith in procuring these search warrants and extensions thereof.

132.     But, in the searches, and searches and seizures authorized and unauthorized, in which Defendants Agent Boyd and Agents (1-6) sought "delayed notices," they knowingly and/or recklessly made false statements and representations and material omissions of facts in relevant affidavits and in bad faith in obtaining the "delayed notices."

133.     But, also in the searches, and searches and seizures authorized and unauthorized, conducted by Defendants Agent Boyd and Agents (1-6) over the last six-and-a-half years was the Plaintiff provided any notice as to those searches and seizures as required by law. Delaying providing these notices to the Plaintiff for six-and-a-half years would not be "within a reasonable time" as required by law.

134.     But, also in the seizures authorized and unauthorized conducted by Defendants Agent Boyd and Agents (1-6) over the last six-and-a-half years was the Plaintiff ever provided a copy of inventories of items of the Plaintiff's they seized as required by law. Delaying providing these inventories to the Plaintiff as required by law for six-and-a-half years would not be "within a reasonable time" as required by law.

135.     The totality of the irregularities in the searches and searches and seizures conducted by Defendants Agent Boyd and Agents (1-6) over the last six-and-a-half years. Coupled by their intentional violations of the law numerously which required them to have provided Plaintiff notice as to those searches, and a copy of inventories of the items of the Plaintiff's Defendants Agent Boyd and Agents (1-6) seized. Clearly constitutes an unlawful and/or unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Todd W. Short respectfully requests:

1.  Injunctive Relief,
2.  Compensatory damages as to all Defendants,
3.  Punitive damages as to all Defendants,
4.  Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

**PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF**

Plaintiff has filed no other lawsuits or sought any administrative relief as to Defendants

Agent Boyd and Agents (1-6).

Date: ~~July 31, 2023.~~ August d/2023

Respectfully submitted,

Todd W. Short, Plaintiff, pro se
2 Carmel Ridge Circle and Apt 105
Asheville, NC 28806
Telephone (828) 407-8018
Email: shorttoddw@yahoo.com

## **VERIFICATION**

I, Todd W. Short, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Bivens Complaint is based upon information and exhibits known to me and/or furnished to me by creditable sources and that everything represented herein is true and correct, to the best of my knowledge.

Executed on this 31st day of July, 2023.

Todd W. Short
Plaintiff, *pro se*